UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

John B. Lovell, Jr.,

        Plaintiff,

      v.                               Civil Action No. 2:12-CV-128

Michael J. Astrue,
Commissioner of Social Security,

        Defendant.

## OPINION AND ORDER
(Docs. 9, 11)

Plaintiff John Lovell brings this action pursuant to 42 U.S.C. § 405(g) of the

Social Security Act, requesting review and remand of the decision of the Commissioner

of Social Security ("Commissioner") denying his application for disability insurance

benefits. Pending before the Court are Lovell's motion to reverse the Commissioner's

decision (Doc. 9), and the Commissioner's motion to affirm the same (Doc. 11). For the

reasons stated below, the Court DENIES Lovell's motion, and GRANTS the

Commissioner's motion.

## Background

Lovell was thirty-eight years old on his alleged disability onset date of

August 3, 2009. He has a high school education and past work experience as a carpenter,

a pipe fitter, and a railroad engineer. (AR 32, 41.) He was married for approximately

two years during the alleged disability period. (AR 188; Doc. 9-3, App. 2 at 3.) He has

at least two biological children, but lost custody of them after being charged with a

domestic assault on his teenage daughter.  (AR 318; Doc. 9-3, App. 2 at 3.)  He also has a record of domestic assault against his wife.  (Doc. 9-3, App. 2 at 3.)  He is a recovering alcoholic, with at least two DUIs, and regularly attends Alcoholics Anonymous meetings. (*Id.*; AR 36.)

Lovell has suffered a number of accidents in his life, causing broken bones and other injuries.  Specifically, Lovell testified at the administrative hearing that he was in a diving accident in 1984, resulting in a broken neck; he was involved in numerous automobile and motorcycle accidents in the 1990s; and he fell off a roof in 2009, breaking both feet.  (AR 32-34.)  He further testified that these accidents resulted in him crushing his leg/shin; breaking his ribs and scapula; puncturing his lung; and crushing his face.  (*Id.*)  Lovell has had numerous surgeries, including bilateral carpal tunnel release in 2002.  (AR 427, 452.)  He has a history of depression and anxiety, which he has treated with medication and counseling.  He has stated that he is not close with his family and has no best friends.  (Doc. 9-3, App. 2 at 3.)

At the May 2011 administrative hearing, Lovell testified that, on a typical day, he feeds his dog,[1] watches television, does yard work, puts the garbage out, shovels snow, and plays the guitar.  (AR 34, 40.)  He stated, however, that he is able to do each of these activities only until his hands and legs became numb and cramped up, taking breaks and naps as necessary.  (AR 34, 37, 40.)  In contrast to this testimony, in 2009 and 2010 Function Reports, respectively, Lovell indicated that he did no house or yard work.  (AR

---

[1] Oddly, Lovell stated in a 2009 Function Report that he fed his *cat*, not his dog.  (AR 188.)  And in a 2010 Function Report, he stated that his wife fed his animals, including "dogs" and "cats."  (AR 212.)

189-90, 213-14.)  He also stated in these Reports that he spent no time with others, and would prefer to be left alone than to socialize.  (AR 191-92, 215-16.)  In the 2010 Report, he stated that he has had problems getting along with family and friends for his whole life.  (AR 216; *see also* AR 192.)

In October 2009, Lovell filed applications for social security income and disability insurance benefits.  In his disability application, he alleged that, starting on August 3, 2009, he has been unable to work due to broken feet, carpal tunnel syndrome ("CTS"), tennis elbow, a broken neck, depression, a fractured leg, a collapsed lung, and broken ribs.  (AR 179.)  He further stated that he suffers from pain; he is unable to walk on his right leg; and he cannot grab anything due to his carpal tunnel.  (*Id.*)  Lovell's application was denied initially and upon reconsideration, and he timely requested an administrative hearing.  The hearing was conducted on May 13, 2011 by Administrative Law Judge ("ALJ") Thomas Merrill.  (AR 28-52.)  Lovell appeared and testified, and was represented by an attorney.  A vocational expert ("VE") also testified at the hearing.  On July 5, 2011, the ALJ issued a decision finding that Lovell was not disabled under the Social Security Act at any time from his alleged onset date through the date of the decision.  (AR 11-22.)  Thereafter, despite Lovell's submission of additional evidence, the Appeals Council denied Lovell's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (AR 1-4.)  Having exhausted his administrative remedies, Lovell filed the Complaint in this action on June 14, 2012.  (Doc. 3.)

## ALJ Decision

The Commissioner uses a five-step sequential process to evaluate disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004). The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if the impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity ("RFC"), which means the most the claimant can still do despite his or her mental and physical limitations based on all the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that

there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566

F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step

five is limited, and the Commissioner "need not provide additional evidence of the

claimant's [RFC]").

Employing this sequential analysis, ALJ Merrill first determined that Lovell had

not engaged in substantial gainful activity since his alleged onset date of August 3, 2009.

(AR 13.)  At step two, the ALJ found that Lovell had the severe impairments of a right

trimalleolar (ankle) fracture, a left metatarsal (foot) fracture, depression with anxiety, and

alcohol abuse.  (*Id.*)  Conversely, the ALJ found that Lovell's gastroesophageal reflux

disease, bradycardia, hemorrhoids, and insomnia were non-severe, as there was no

evidence that any of these conditions caused more than mild work-related limitations.

(AR 14.)  At step three, the ALJ found that none of Lovell's impairments, alone or in

combination, met or medically equaled a listed impairment.  (AR 14-15.)

Next, the ALJ determined that Lovell had the RFC to perform light work, as

defined in 20 C.F.R. § 404.1567(b), with the following restrictions:

> [Lovell] can stand or walk for 4 hours, and sit for 6 hours during an 8-hour
> workday.  He can occasionally push and pull with [the] bilateral lower
> extremities.  The claimant should never climb ladders, but can occasionally
> climb stairs and balance.  He can frequently crouch, crawl, bend, kneel, and
> stoop.  He should avoid concentrated exposure to cold and to vibration.
> The claimant retains the ability to understand and remember one to 3-step
> instructions.  He may need some repetition, but not to an extended degree.
> He can sustain concentration, pace, and persistence for two hours [sic]
> periods over an 8-hour workday and workweek.  The claimant cannot
> tolerate intense contact with the public or coworker[s].  He would do best
> with tasks requiring limited social interaction, but can manage routine
> social interactions and collaborate with supervisors and coworkers.

(AR 15.)  Given this RFC, and accepting the VE's testimony, the ALJ found that Lovell was unable to perform his past relevant work as a carpenter, a railroad engineer, or a pipe fitter.  (AR 20.)  Finally, again based on testimony from the VE, the ALJ determined that Lovell was capable of making a successful adjustment to other work that existed in significant numbers in the national economy, including work as a courier, mail clerk, office helper, storage facility rental clerk, and eyeglass assembler.  (AR 20-21.)  The ALJ concluded that Lovell had not been under a disability from the alleged onset date of August 3, 2009 through the date of the decision.  (AR 21.)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

In reviewing a Commissioner's disability decision, the court limits its inquiry to a "review [of] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard."  *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v.*

*Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). A court's factual

review of the Commissioner's decision is limited to determining whether "substantial

evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v.*

*Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d

Cir. 1990) ("Where there is substantial evidence to support either position, the

determination is one to be made by the fact[-]finder."). "Substantial evidence" is more

than a mere scintilla; it means such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971);

*Poupore*, 566 F.3d at 305. In its deliberations, the court should consider that the Social

Security Act is "a remedial statute to be broadly construed and liberally applied."

*Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## Analysis

### I.     New Evidence

Lovell argues that the Appeals Council erred in stating that the "new information"

submitted by Lovell, including an October 2011 Disability Determination Explanation

("DDE") and a September 2011 "Confidential Psychological Report" prepared by Dennis

Reichardt, Ph.D., was "about a later time." (AR 2; *see* Doc. 9-1 at 2-4, Apps. 1-2.) The

Commissioner responds that there was no error because (a) the Appeals Council properly

determined that the records did not relate to the period on or before the ALJ's decision,

and (b) consideration of these records would not have changed the ALJ's decision.

**A.      October 2011 DDE (Doc. 9-2, App. 1)**

In October 2011, approximately three months after the ALJ issued his decision, a subsequent DDE was issued.  (Doc. 9-2, App. 1.)  In relevant part, the DDE states that, during a July 2011 examination which occurred approximately two weeks after the ALJ issued his decision, Lovell "was noted to have + Phalen's/Tinnel's bilat[erally]."  (*Id.* at 7.)  The DDE further states that nerve conduction studies of Lovell's right hand were consistent with mild CTS and a more generalized peripheral neuropathic process.  (*Id.*)  Lovell claims that, because the record demonstrates he had a history of CTS and because CTS is a chronic condition, the DDE's statements regarding his CTS relate to the period on or before the ALJ's decision, and thus the Appeals Council erred in finding otherwise.  (Doc. 9-1 at 3.)  The Court disagrees for two principal reasons.

First, there is no indication in the DDE that the statements regarding Lovell's CTS were meant to be retrospective.  *See Vitale v. Apfel*, 49 F. Supp. 2d 137, 142 (E.D.N.Y. 1999) (citing *Jones v. Sullivan*, 949 F.2d 57, 59-60 (2d Cir. 1991)) (a retrospective opinion may be used to support the existence of a disability *only when that opinion clearly refers to the disability period and not when the opinion "simply express[es] an opinion as to the claimant's current status"*) (emphasis added); *see also Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004) (to be "material," evidence must be "relevant to the claimant's condition during the time period for which benefits were denied").  Rather, the evidence is to the contrary, as the DDE itself states that "[t]he [disability] onset date cannot be prior to 07/06/2011," and that the physical RFC assessment applies only to the period from "07/06/2011 – Present," i.e., beginning the day after the ALJ issued his

July 5, 2011 decision. (Doc. 9-2, App. 1 at 7, 10.) Moreover, the only evidence of Lovell experiencing symptoms of CTS during the period covered by the ALJ's decision (August 3, 2009 through July 5, 2011) are Lovell's own subjective complaints at the hearing and to his doctors. (*See, e.g.,* AR 34, 37, 40, 305, 452.) The ALJ, however, found that Lovell was not entirely credible; and Lovell does not challenge that finding.

Second, it is unclear how the DDE's statement that Lovell was diagnosed with mild CTS approximately two weeks after the ALJ issued his decision would have changed the ALJ's decision. For new evidence to be "material" and thus require remand or reversal of the ALJ's decision, there must be "a reasonable possibility" that the evidence "would have influenced the [Commissioner] to decide [the] claimant's application differently." *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988). Here, it is unlikely the ALJ would have decided Lovell's claim differently had he been in possession of the DDE. This is because, although the DDE notes Lovell's CTS diagnosis, it also notes that Lovell was not significantly limited as a result of the CTS, stating that Lovell had "full [range of motion], intact sensation to light touch, strong hand grasps and normal pulses." (Doc. 9-2, App. 1 at 7.) Furthermore, after considering the CTS diagnosis, the DDE concludes that Lovell still was not disabled. (*Id.* at 16.) Specifically, the DDE states:

> You indicated you have . . . carpal tunnel . . . . You have received treatment for th[is] condition[]. Although you have pain and discomfort, you are still able to move about and use your arms, hands[,] and legs for most everyday activities. You should be able to do some light lifting and stand or sit for most of a work day.

(*Id.* at 17.)

The record, including the October 2011 DDE, demonstrates that this is not a case of a retrospective diagnosis of a condition that was disabling during the relevant period, but rather, a case of a non-disabling condition that subsequently deteriorated after the relevant period. *See Pearson v. Astrue*, No. 1:10-CV-00521 (MAD), 2012 WL 527675, at *11 (N.D.N.Y. Feb. 17, 2012) ("Materiality requires that the new evidence not concern a later-acquired disability or the subsequent deterioration of the previous non-disabling condition.") (quotation omitted); *compare Lisa v. Sec'y of Health & Human Servs.*, 940 F.2d 40, 44 (2d Cir. 1991) (introduction of new diagnostic evidence presented a "reasonable possibility" of influencing the Commissioner to decide claimant's application differently, where the evidence suggested that claimant had an impairment "substantially more severe than was previously diagnosed"). Therefore, the Appeals Council did not err in declining to review the ALJ's July 2011 decision based on the submission of the October 2011 DDE.

### B. September 2011 Psychological Report (Doc. 9-3, App. 2)

Lovell also asserts that the Appeals Council should have considered the "Confidential Psychological Report" of Dr. Reichardt, who interviewed and examined Lovell on September 21, 2011, approximately three months after the ALJ issued his decision. (Doc. 9-1 at 4; *see* Doc. 9-3, App. 2.) In the Report, Dr. Reichardt diagnosed Lovell with major depressive disorder, attention-deficit/hyperactivity disorder, alcohol dependence in early full remission, nicotine dependence, opiate dependence (prescribed), paranoid personality traits, and borderline verbal abilities (deferred). (Doc. 9-3, App. 2 at 5.) The Doctor stated that Lovell's employment "would have to be in low[-]skilled work

or in an area using his stronger nonverbal skills," and that Lovell "has suicidal ideation and is emotionally unstable," and is "pessimistic about his future and has little social support."  (*Id.* at 4.)

Lovell refers to Dr. Reichardt's findings in the Report that Lovell attained an IQ of only 74, had paranoid ideation and a panic disorder with agoraphobia, and experienced suicidal ideation and was emotionally unstable.  (Doc. 9-1 at 4; Doc. 9-3, App. 2 at 4.) Fatally, however, Lovell does not contend there was a reasonable possibility that these findings would have changed the ALJ's decision.  The Court finds to the contrary for several reasons.  *See Tirado*, 842 F.2d at 597 ("The concept of materiality requires . . . a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently.").  Most importantly, as with the October 2011 DDE, Lovell fails to demonstrate that Dr. Reichardt's September 2011 findings relate to the period under review.  *See Pollard*, 377 F.3d at 193 (to be "material," evidence must be "relevant to the claimant's condition during the time period for which benefits were denied").  Dr. Reichardt's findings are based on his review of the record and one appointment with Lovell, consisting of a clinical interview, a mental status examination, and a quick test of intelligence.  (Doc. 9-3, App. 2 at 2.)  As noted above, this appointment (and presumably the review of the record as well) occurred months after the ALJ issued his decision.  Dr. Reichardt made no effort to connect his findings with an earlier period, and in fact explicitly used the present tense in his Report, stating for example that Lovell's "combined issues *now* would suggest that his prognosis for retaining employment *now* would be poor."  (*Id.* at 4 (emphases added).)  There is no

indication that Dr. Reichardt intended his findings to be retrospective to the period under review by the ALJ.

Moreover, Dr. Reichardt's Report addresses solely Lovell's mental impairments, diagnosing Lovell with major depressive disorder and depressive disorder with anxiety. Yet the ALJ recognized at step two of his decision that Lovell had the severe mental impairment of depression with anxiety (AR 13), and accounted for this impairment in his RFC determination, finding that Lovell "may need some repetition" in instructions; could sustain concentration, persistence, and pace for only two-hour periods; could not tolerate "intense contact with the public or coworker(s)"; and "would do best with tasks requiring limited social interaction" (AR 15). Also, the ALJ discussed a January 2010 "consultative examination" in his decision, noting its confirmation of a diagnosis of depression. (AR 14 (citing AR 319).) Furthermore, in the October 2011 DDE, even after considering Dr. Reichardt's Report, a disability adjudicator determined that Lovell had virtually the same mental limitations that the ALJ included in his RFC determination, and concluded (like the ALJ) that Lovell was not disabled. (Doc. 9-2, App. 1 at 7-8, 14, 16.)

For these reasons, the Court finds that the Appeals Council did not err in declining to review the ALJ's decision based on the submission of Dr. Reichardt's September 2011 Report.

## II. RFC Determination

Lovell next challenges the ALJ's RFC determination, contending that the ALJ erred in finding that Lovell retained the ability to understand and remember one-to-three-step instructions. (Doc. 9-1 at 4.) Lovell does not argue that substantial evidence

12

supports a different finding regarding his ability to understand and remember

instructions, but rather, asserts merely that the ALJ's finding on this issue is contradicted

by the Mental RFC Assessments of state agency consultants Edward Hurley, Ph.D. and

Ellen Atkins, Ph.D. (*Id.* at 4-5.) The argument fails.

Although Dr. Hurley opined in the checkmark portion of his Assessment (Section

I, "Summary Conclusions") that Lovell was moderately limited in his ability to

understand and remember detailed instructions and markedly limited in his ability to

carry out detailed instructions (AR 447), he opined in the narrative portion of the

Assessment (Section III, "Functional Capacity Assessment") that Lovell retained the

understanding and memory for one-to-three-step instructions (AR 449). Dr. Hurley

added that Lovell "[m]ay need some repetition, but not to [an] extraordinary degree."

(*Id.*) Dr. Atkins made similar opinions approximately seven months earlier, differing

only in her opinion in the checkmark portion of her Assessment that Lovell was markedly

limited in his ability understand and remember detailed instructions. (AR 383, 385.)

The ALJ's mental RFC determination adopted the narrative portions of Dr.

Atkins's and Dr. Hurley's Assessments verbatim. (AR 15, 18.) This was proper, as the

Social Security Administration's Program Operations Manual System ("POMS") directs

that "it is the narrative written by the psychiatrist or psychologist in [S]ection III . . . of

[the Mental RFC Assessment] form . . . that adjudicators are to use as the assessment of

RFC." POMS DI 25020.010B.1, available at https://secure.ssa.gov/apps10/poms.nsf/lnx/

0425020010 (last visited Jan. 7, 2012). Although the POMS does not have the force and

effect of law, it is nevertheless persuasive authority and thus is entitled to be given

weight.  *See St. Mary's Hosp. v. Blue Cross & Blue Shield*, 788 F.2d 888, 890 (2d Cir. 1986); *Davis v. Sec'y of Health and Human Servs.*, 867 F.2d 336, 340 (6th Cir. 1989); *Frerks v. Shalala*, 848 F. Supp. 340, 350 (E.D.N.Y 1994).

Lovell appears to contend that the ALJ's RFC determination also fails to incorporate Dr. Atkins's and Dr. Hurley's assessment of Lovell's social limitations. (Doc. 9-1 at 4-5.)  Both consultants checked off boxes in their Assessments indicating that Lovell was markedly limited in his ability to interact appropriately with the general public.  (AR 384, 448.)  Nonetheless, each consultant wrote in their narratives that, although Lovell should have only limited "intense contact with [the] general public, harsh supervisors[,] and intense contact with coworkers," he could manage "routine social interactions and collaborate with supervisors and coworkers in [a] low[-]stress work setting."  (AR 385, 449.)  The ALJ incorporated these limitations in his RFC determination, finding that Lovell could not tolerate "intense contact with the public or coworker[s]," would do best with tasks requiring "limited social interaction," and could manage only "routine social interactions."  (AR 15.)

## III.    Step-Five Determination that There Are Jobs Existing in Significant Numbers in the National Economy that Lovell Could Perform

Next, Lovell contends that the ALJ erred in his step-five determination that five representative jobs—courier, mail clerk, office helper, storage facility rental clerk, and eyeglass assembler—existed in significant numbers in the national economy that Lovell could perform.  The Commissioner counters by correctly pointing out that proof that Lovell can perform just one job is sufficient to demonstrate that Lovell can perform other

work, and by asserting that substantial evidence supports the ALJ's determination that Lovell could perform each of the five jobs listed in the ALJ's decision.

As noted above, at step five of the ALJ's sequential evaluation process, there is a limited burden shift to the Commissioner to demonstrate that a significant number of jobs exist in the national economy that the claimant can perform. *Poupore*, 566 F.3d at 306; *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. § 404.1520(g). The Commissioner may meet this burden by relying on the testimony of a VE at the administrative hearing in response to a hypothetical question asking whether a person with the claimant's RFC, age, education, and work experience would be able to perform other work existing in the national economy. *Butts*, 388 F.3d at 384; *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983) (VE's opinion, properly based on claimant's skills and limitations, satisfies Commissioner's burden to show existence of other work that claimant can perform). The rulings and regulations of the Social Security Administration anticipate that the testimony of a VE will be consistent with information supplied in the Department of Labor's Dictionary of Occupational Titles ("DOT"). *Richardson v. Soc. Sec. Admin.*, 1:10-cv-00313-JAW, 2011 WL 3273140, at *11 (D. Me. July 29, 2011) (citing SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000)). The Commissioner has a policy of relying primarily on the DOT to classify the various characteristics of occupations. *See* SSR 00-4p, 2000 WL 1898704, at *2.

## A.      Application of DOT

Lovell asserts that four of the five jobs identified in the ALJ's decision (all jobs except the eyeglass assembler job) are precluded by the DOT because they require at

least an ability to apply commonsense understanding to carry out detailed but uninvolved instructions. (Doc. 9-1 at 5.) In other words, Lovell argues that he is limited to Reasoning Level 1 jobs, as defined in the DOT (*see* Doc. 9-4, App. 3 at 5), and that the ALJ erred in accepting the VE's testimony that Lovell could perform jobs requiring Reasoning Levels 2 and 3.[2] The only evidence referenced by Lovell in support of this argument is Dr. Hurley's checkmark in a box on his Mental RFC Assessment indicating that Lovell was markedly limited in his ability to carry out detailed instructions. (Doc. 9-1 at 6 (citing AR 447).) As noted above, however, in the narrative portion of his Assessment, Dr. Hurley found that Lovell retained the understanding and memory for one-to-three-step instructions. (AR 449.) Dr. Atkins similarly opined (AR 385); and the ALJ adopted these findings (AR 15, 18-19).

Preliminarily, the Court notes that the issue is whether there is substantial evidence to support the ALJ's finding that Lovell can perform the particular jobs testified to by the VE and listed in the ALJ's decision, not whether—in the abstract—Lovell can perform work at a Reasoning Level of 1, 2, or 3. *See Zokaitis v. Astrue*, No. 1:10-CV-30, 2010 WL 5140576, at *12 (D. Vt. Oct. 28, 2010), *aff'd*, 465 F. App'x 17 (2d Cir. 2012). Moreover, neither the VE nor the ALJ was obligated to follow the DOT. As the Sixth

---

[2] The DOT defines six reasoning development levels (R1-R6). Only the first three are relevant here, and they are defined as follows: R1: "Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job"; R2: "Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations"; R3: "Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." U.S. Dep't of Labor, *Dictionary of Occupational Titles*, 1991 WL 688702 (4th ed. 1991).

Circuit has explained, ALJs are not required to rely on classifications in the DOT, and may instead rely on VE testimony, even if that testimony is inconsistent with the DOT. *Conn v. Sec'y of Health & Human Servs.*, 51 F.3d 607, 610 (6th Cir. 1995) (citing 20 C.F.R. § 404.1566(d)). The Eighth Circuit added: "DOT definitions are simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range." *Wheeler v. Apfel*, 224 F.3d 891, 897 (8th Cir. 2000) (quotation omitted); *see also Warf v. Shalala*, 844 F. Supp. 285, 289 (W.D. Va. 1994) ("The 'definitional requirements' for the jobs listed in the DOT are merely advisory in nature and serve only as a reference for the ALJ and VE.").

The Court is not persuaded by Lovell's bare implication, without reference to any supporting case law or other applicable authority, that a limitation to understanding and remembering one-to-three-step instructions necessarily precludes Reasoning Level 2 and 3 jobs. As pointed out by the Commissioner (Doc. 11-1 at 12-13), several federal courts have held to the contrary, finding that a claimant limited to one-to-three-step instructions *can* perform jobs requiring up to a Reasoning Level of 3. *See Dorego v. Astrue*, No. 10-11768, 2012 WL 603196, at *18 (D. Mass. Feb. 24, 2012) ("Judge[s] should be permitted to rely on [VE] testimony that supplies a level three reasoning job in response to a hypothetical requesting jobs involving basic, four-step instructions and tasks."); *Fallon v. Soc. Sec. Admin.*, No. 1:10-cv-00058-JAW, 2011 WL 167039, at *9 (D. Me. Jan.14, 2011); *Marshall v. Barnhart*, No. 01-2211, 2002 WL 32488432, at *9-10 (D. Md. Sept. 27, 2010) (finding that a claimant limited to performing "simple, repetitive 1, 2, 3 step tasks" could perform job with level three reasoning, where there was no evidence that

claimant lacked "common sense"). Moreover, several jurisdictions have found that a claimant limited to simple and routine work, which reasonably could encompass work involving no more than three-step instructions, is able to perform Reasoning Level 2 jobs. *See Lara v. Astrue*, 305 F. App'x 324, 326 (9th Cir. 2008) ("[S]omeone able to perform simple, repetitive tasks is capable of doing . . . Reasoning Level 2 jobs."); *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (level 2 reasoning appears to be consistent with RFC of simple and routine work tasks); *Money v. Barnhart*, 91 F. App'x 210, 215 (3d Cir. 2004) ("Working at reasoning level 2 would not contradict the mandate that [claimant's] work be simple, routine and repetitive."); *Carrigan v. Astrue*, No. 2:10-cv-303, 2011 WL 4372651, at *10 (D. Vt. Aug. 26, 2011) ("The weight of the authority compels a conclusion that, generally, [a claimant] who is able to perform simple, repetitive tasks, is capable of performing Reasoning Level 2 jobs."). Further, although there is a split of authority on the issue, many federal courts have found that a claimant who is limited to performing simple and routine work is capable of performing Reasoning Level 3 jobs. *See Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009) (RFC for simple work not inconsistent with jobs listed in DOT at reasoning level 3); *Welch v. Astrue*, No. 1:11-cv-384-GZS, 2012 WL 3113148, at *7 n.6 (D. Me. July 11, 2012) (collecting cases); *Reynolds v. Comm'r of Soc. Sec.*, No. 11-00778, 2012 WL 2050410, at *6 (N.D.N.Y. June 6, 2012) ("a limitation to simple work does not preclude a job that has a reasoning development level of 2 or 3"); *Auger v. Astrue*, 792 F. Supp. 2d 92, 96-97 (D. Mass. 2011) (citing cases and joining "the great weight of authority" holding that no conflict exists between a limitation to "simple and unskilled work" and "the DOT's level-

three classification").

Thus, Lovell has failed to demonstrate a conflict between the ALJ's finding that Lovell was able to perform jobs involving one-to-three-step instructions and the ALJ's step-five determination that Lovell could perform jobs requiring a Reasoning Level of 2 or 3, including the jobs of courier, mail clerk, office helper, and storage facility rental clerk. Lovell has not specified why he was unable to perform these jobs, and the ALJ was entitled to rely on the VE's testimony regarding Lovell's ability to perform them.

**B.     Manipulative Limitations due to CTS**

Next, Lovell argues that the ALJ erred in finding that Lovell could perform the jobs of courier, mail clerk, office helper, storage facility rental clerk, and eyeglass assembler, given his manipulative limitations caused by his CTS. (Doc. 9-1 at 7.) Specifically, Lovell contends that, given the reaching, handling, and fingering limitations stated in the October 2011 DDE (Doc. 9-2, App. 1 at 7, 11-12), he was prevented from performing any jobs requiring frequent manipulative demands, including all five jobs listed in the ALJ's decision. The Court rejects this argument for the reasons stated above: (1) there is no indication in the DDE that the statements regarding Lovell's mild CTS were meant to apply to the relevant period; (2) the only evidence of Lovell experiencing symptoms of CTS during the relevant period are Lovell's own subjective complaints at the hearing and to his doctors, but the ALJ found that Lovell was not entirely credible and Lovell does not challenge that finding; and (3) although the DDE notes Lovell's CTS diagnosis, it also notes that Lovell was not significantly limited as a result of the CTS and concludes that Lovell was not disabled.

### C.    Eyeglass Assembler Job

Finally, Lovell contends the VE's testimony that the eyeglass assembler job exists in significant numbers in the national economy is unreliable.  (Doc. 9-1 at 8.)  The VE testified that his job numbers derived from "the aggregate of all unskilled assembly jobs, SVP two or below that are sedentary."  (AR 43.)  He clarified: "[A]t this point it is not possible or practical to break down the exact number of each DOT code. . . .  But, what I have done, is I have taken the aggregate number of sedentary, unskilled assembly jobs and have divided them."  (AR 46-47.)  He explained: "What I did, was I basically just took the rough number of all of the sedentary, SVP one and two assembly jobs and that is the number that I provided.  I have used the DOT code for eyeglass assembler, as an example."  (AR 47.)  The VE concluded that there were 300,000 eyeglass assembler jobs in the national economy and 110 in Vermont.  (*Id.*)  He further stated that, in arriving at these numbers, he "used the Employment Statistics Orderly II, United Statistical Publishers Kansas City," and noted that "[t]he third-quarter of 2010 numbers were reduced significantly using the specific Occupational Selector Manual published by the same group."  (AR 49.)

The Court finds no error.  The Second Circuit has recently held that, "it is enough that a vocational expert 'identified the sources he generally consulted to determine [the job numbers],' noting the 'the marked absence of any applicable regulation or decision of this Court requiring a vocational expert to identify with greater specificity the source of his figures or to provide supporting documentation.'"  *Dugan v. Soc. Sec. Admin.*, No. 11-2825-cv, 2012 WL 5259130, at *2 (2d Cir. Oct. 25, 2012) (quoting *Brault v. Soc. Sec.*

*Admin.*, 683 F.3d 443, 450 (2d Cir. 2012)); *see Galiotti v. Astrue*, 266 F. App'x 66, 68 (2d Cir. 2008). Here, the VE properly identified the sources he consulted to determine his job numbers. This testimony, coupled with the VE's expertise and experience, constitutes sufficiently reliable evidence at step five of the ALJ's sequential evaluation. *See Brault*, 683 F.3d at 448 (reconfirming "flexible" substantial evidence approach to disability proceedings, and holding that ALJ was not required to state reasons for accepting VE's testimony, which claimant challenged on grounds that VE's methodology did not reliably match the job types in the DOT with other data showing employment numbers); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("A VE's recognized expertise provides the necessary foundation for his or her testimony."); *Palmer v. Astrue*, No. 1:10-cv-151-jgm, 2011 WL 3881024, at *6 (D. Vt. Sept. 2, 2011) (rejecting claimant's argument that data and reasoning underlying VE testimony must be available on demand, and finding VE's testimony "sufficiently reliable" because it was "based on identifiable statistics" and "informed by [the VE's] expertise and experience").

Even assuming arguendo that Lovell's argument has merit, it does not require remand or reversal because, as noted above, the ALJ's decision included four additional jobs that Lovell could perform, and Lovell fails to successfully challenge the ALJ's decision regarding those jobs. Specifically, as noted above, the ALJ found that there were five jobs existing in significant numbers in the national economy that Lovell could do–courier, mail clerk, office helper, storage facility rental clerk, and eyeglass assembler. (AR 21.) Removing the job of eyeglass assembler still leaves the jobs of courier, mail clerk, office helper, and storage facility rental clerk. The regulations require that a

significant number of jobs exist in only "one or more occupations." 20 C.F.R. § 404.1566(b). Therefore, even if Lovell was able to do only one of the five jobs which the ALJ determined existed in significant numbers in the national economy, a finding of not disabled would be appropriate. *See Martin v. Comm'r of Soc. Sec.*, No. 5:06-CV-720 (GLS/DEP), 2008 WL 4793717, at *12 (N.D.N.Y. Oct. 30, 2008) (citing 42 U.S.C. §§ 423(d)(1), (d)(2)(A), 1382c(a)(3)(A), (B)).

### Conclusion

For these reasons, the Court DENIES Lovell's motion (Doc. 9), GRANTS the Commissioner's motion (Doc. 11), and AFFIRMS the decision of the Commissioner.

Dated at Burlington, in the District of Vermont, this 16th day of January, 2013.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge